# Exhibit A

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
CALENDAR: C
PAGE 1 of 11
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY
STATE OF ILLINOIS

JOHN CURRAN,

                  Plaintiff,

v.

Smith & Nephew, Inc.

                  Defendant.

Case Number:

JURY DEMAND

## COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, JOHN CURRAN, by and through his attorney, PETER J. FLOWERS of MEYERS & FLOWERS, L.L.C. complaining against Defendant SMITH & NEPHEW, INC. and allege:

### COMMON ALLEGATIONS

1.     JOHN CURRAN was implanted with a Smith & Nephew Emperion Hip System (hereinafter referred to as "Emperion") in the State of Illinois.

2.     JOHN CURRAN's Emperion was removed from his hip in the State of Illinois.

3.     At all relevant times, Smith & Nephew was registered as a Delaware Corporation.

4.     At all relevant times, Smith & Nephew was duly registered and/or licensed to do business in the State of Illinois.

5.     Smith & Nephew's registered agent in Illinois is CT Corporation System located at 208 South LaSalle Street, Suite 814, Chicago, Illinois, 60604.

6.     This products liability lawsuit seeks compensatory damages on behalf of JOHN CURRAN, who was implanted with an artificial hip replacement system known as the Emperion

1

that the Defendant, SMITH & NEPHEW, INC., designed, manufactured, marketed, sold and distributed.

7.     At all relevant times, Smith & Nephew has been the exclusive sales agent and distributor for the Emperion in Illinois.

8.     The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (ball like structure at the top of the femur), rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

9.     A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a liner and (4) an acetabular shell. The surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

10.     The Emperion hip implant design is more prone to component fracture when implanted into a human being than hip devices manufactured by other companies.

11.     The Emperion and related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A 510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 2 of 11

2

12. Before July 8, 2009, JOHN CURRAN began medical treatment for right hip arthritis with Wayne Goldstein, M.D.

13. Before July 8, 2009, Wayne Goldstein, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, through his experience and training in the practice of medicine, indicated JOHN CURRAN met the criteria for a total hip replacement on his right hip.

14. On or about July 8, 2009, Wayne Goldstein, M.D., implanted the Smith & Nephew's EMPERION™ into the right hip of JOHN CURRAN in the State of Illinois.

15. At all relevant times and before the implantation of the EMPERION in the PLAINTIFF, SMITH & NEPHEW and knew that the EMPERION was defective and harmful to consumers.

16. At all relevant times and before the implantation of the EMPERION in the PLAINTIFF, SMITH & NEPHEW had regular and frequent communications from surgeons who had implanted the EMPERION, including PLAINTIFF's surgeon, regarding failures and complications of the EMPERION.

17. Sometime after July 8, 2009, JOHN CURRAN learned that his EMPERION failed and needed to be revised with another hip prosthesis.

18. Sometime after July 8, 2009, JOHN CURRAN learned that his EMPERION had prematurely failed.

19. On or about October 27, 2011, Alexander Gordon, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the EMPERION implant from JOHN CURRAN and replaced it with another hip prosthesis in the State of Illinois.

## COUNT I – STRICT PRODUCT LIABILITY AGAINST SMITH & NEPHEW

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 3 of 11

20.     JOHN CURRAN incorporates by reference paragraphs 1 through 19 of the Common Allegations as if fully set forth herein.

21.     SMITH & NEPHEW had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the EMPERION that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

22.     SMITH & NEPHEW did in fact sell, distribute, supply, and/or promote the EMPERION to JOHN CURRAN and his implanting physician.

23.     SMITH & NEPHEW expected the EMPERION it was selling, distributing, supplying, manufacturing, and/or promoting to reach, and it did in fact reach, implanting physicians and consumers in the state of Illinois, including Plaintiff and his implanting physicians, without substantial change in the condition.

24.     At the time the EMPERION left the possession of SMITH & NEPHEW and the time EMPERION entered the stream of commerce, the EMPERION was in an unreasonably dangerous and defective condition. These defects include but are not limited to the following:

(a)     The EMPERION was not reasonably safe as intended to be used;

(b)     The EMPERION had an inadequate design for the purposes of hip replacement;

(c)     The EMPERION contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d)     The EMPERION's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

(e)     The EMPERION's unstable and defective design resulted in a hip prosthesis

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 4 of 11

4

which was more dangerous than the ordinary consumer would expect;

(f) The EMPERION failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(g) The EMPERION was insufficiently tested;

(h) The warning to PLAINTIFF and PLAINTIFF's implanting physicians about the dangers the EMPERION posed to consumers including PLAINTIFF were inadequate. The inadequacy of SMITH & NEPHEW's warnings include, but are not limited to, the following:

    i. Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the EMPERION, subjecting PLAINTIFF to risks which exceeded the benefits of the EMPERION;

    ii. Contained misleading warnings emphasizing the efficacy of the EMPERION while downplaying the risks associated with it, thereby making use of the EMPERION more dangerous than the ordinary consumer would expect;

    iii. Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the EMPERION;

    iv. Did not disclose that it was inadequately tested;

    v. Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the EMPERION;

    vi. Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers.

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 5 of 11

5

25.     JOHN CURRAN used the EMPERION for its intended purpose, i.e. hip replacement.

26.     JOHN CURRAN could not have discovered any defect in the EMPERION through the exercise of due care.

27.     SMITH & NEPHEW as designer, manufacturer, marketer, and distributor of medical devices are held to the level of knowledge of an expert in their field.

28.     JOHN CURRAN and the implanting physician did not have substantially the same knowledge as the designer, manufacturer, or distributor: SMITH & NEPHEW.

29.     As a direct and proximate result of one or more of the forgoing wrongful act or omissions in the by SMITH & NEPHEW, JOHN CURRAN was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, JOHN CURRAN prays for judgment against Defendant, SMITH & NEPHEW OSTEONICS CORPORATION., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 6 of 11

## COUNT II – NEGLIGENCE AGAINST SMITH & NEPHEW

30.     Plaintiffs incorporate by reference paragraphs 1 through 19 of the Common Allegations as if fully set forth herein.

31.   At all times relevant, it was the duty of SMITH & NEPHEW to exercise due care in designing, testing, manufacturing, distributing, marketing, promoting, and selling of the EMPERION such that it would be reasonably safe for its intended use.

32.   SMITH & NEPHEW's negligence in the designing, testing, manufacturing, distributing, marketing, promoting, and selling of the EMPERION.

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 7 of 11

a.  EMPERION was negligently designed and manufactured, creating increased metal corrosion;

b.  surgical protocol which, among other things, creates a requisite degree of surgical skill for proper use of the device that is not possessed by a significant number of U.S. surgeons, even after a proper review of all of the EMPERION surgical technique literature, other SMITH & NEPHEW literature, and proper training in residency programs;

c.  SMITH & NEPHEW committed manufacturing errors, including but not limited to size tolerances out of specification and not within industry acceptable standards.

d.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the EMPERION was fit for its intended purpose when, in fact, it was not;

e.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the EMPERION had been adequately and reliably tested when, in fact, it was not;

f.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the EMPERION was safe and effective and was appropriate for use by human beings when, in fact, it was not;

g.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the EMPERION was comparable to that of other hip replacement systems, when in fact it was not;

h.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the EMPERION had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

33.  SMITH & NEPHEW knew or had reason to know that JOHN CURRAN, as a member of the general public for whose use the EMPERION was placed into interstate commerce, would be likely to use the EMPERION in a manner described in this Complaint.

34.  SMITH & NEPHEW knew or reasonably should have known of the danger associated with the manner and circumstances of JOHN CURRAN's foreseeable use of the EMPERION, which danger would not be obvious to the general public.

35.  As a direct and proximate result of one or more of the forgoing wrongful act or omissions by SMITH & NEPHEW, JOHN CURRAN was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, JOHN CURRAN prays for judgment against defendant SMITH & NEPHEW OSTEONICS CORPORATION., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT III – BREACH OF WARRANTY AGAINST SMITH & NEPHEW

36.  Plaintiffs incorporate by reference paragraphs 1 through 19 of the Common

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 8 of 11

Allegations as if fully set forth herein.

37.    JOHN CURRAN currently is not in possession of any document relating to representations, warnings, and/or communications made by defendants in this action. JOHN CURRAN reserves the right to present evidence in support of the claim which is not presently in his possession, but which will be discovered in the ordinary course of litigation. Such evidence may include, but is not necessarily limited to: Instruction for Use Manuals; all written material or information provided on and/or within any and all packaging associated with JOHN CURRAN' device; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from SMITH & NEPHEW in this action, including SMITH & NEPHEW's employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's implanting surgeon and JOHN CURRAN. Upon information, knowledge and belief, JOHN CURRAN alleges the documents, instruments and/or evidence stated above are in the possession of SMITH & NEPHEW.

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 9 of 11

38.    At the time SMITH & NEPHEW marketed, sold, and/or distributed the EMPERION, it knew that the hip device was intended for human use.

39.    At the time SMITH & NEPHEW marketed, sold, and/or distributed the EMPERION, JOHN CURRAN was a foreseeable user of the device.

40.    At the time SMITH & NEPHEW marketed, sold, and/or distributed the EMPERION, it expressly and/or impliedly warranted that the hip, including all of its component parts, was safe and merchantable for their intended use.

9

41.    JOHN CURRAN and his implanting surgeon reasonably relied upon the representations that the EMPERION was of merchantable quality and safe for their intended uses.

42.    JOHN CURRAN used the EMPERION for its intended purpose.

43.    Contrary to the express and implied warranties, at the time SMITH & NEPHEW marketed, sold and/or distributed the EMPERION, it was not of merchantable quality or safe for their intended use as described above.

44.    As a direct and proximate result of one or more of the forgoing wrongful act or omissions by SMITH & NEPHEW, JOHN CURRAN was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, JOHN CURRAN, prays for judgment against defendant SMITH & NEPHEW OSTEONICS CORPORATION., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 10 of 11

**JURY DEMAND**

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.

RESPECTFULLY SUBMITTED,

MEYERS & FLOWERS, LLC.

By:_____

Peter J. Flowers
One of the Attorneys for Plaintiff

Peter J. Flowers (#56079)
PJF@Meyers-Flowers.com
Meyers & Flowers, L.L.C.
225 West Wacker Drive, Suite 1515
Chicago, Illinois 60606
(630) 232-6333

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
PAGE 11 of 11

11

# Exhibit B

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

ELECTRONICALLY FILED
6/28/2013 10:33 AM
2013-L-007437
CALENDAR: C
PAGE 1 of 1
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, Law _____ DIVISION

No. _____

Smith & Nephew, Inc. c/o CT Corporation

208 So. LaSalle Street, Suite 814

Chicago, IL 60604

John Curran

**(Name all parties)**

v.

Smith & Nephew, Inc.

## ⊙ SUMMONS ◯ ALIAS SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

- ⊙ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

| ◯ **District 2 - Skokie**<br>5600 Old Orchard Rd.<br>Skokie, IL 60077 | ◯ **District 3 - Rolling Meadows**<br>2121 Euclid<br>Rolling Meadows, IL 60008 | ◯ **District 4 - Maywood**<br>1500 Maybrook Ave.<br>Maywood, IL 60153 |
|---|---|---|
| ◯ **District 5 - Bridgeview**<br>10220 S. 76th Ave.<br>Bridgeview, IL 60455 | ◯ **District 6 - Markham**<br>16501 S. Kedzie Pkwy.<br>Markham, IL 60428 | ◯ **Child Support**<br>28 North Clark St., Room 200<br>Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 56079

Name: Peter J. Flowers

Atty. for: Plaintiff

Address: 225 West Wacker Drive, Suite 1515

City/State/Zip: Chicago, IL 60606

Telephone: (630) 232-6333

WITNESS, _____, _____

**Clerk of Court**

Date of service: 5 Jul , 13
**(To be inserted by officer on copy left with defendant or other person)**

Service by Facsimile Transmission will be accepted at: **(630) 845-8982**

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# AFFIDAVIT OF SERVICE

Case No.: __2013 L 7437__

I certify I served this writ on the defendant as follows:

_____ (a) Personal Service - by personally leaving a copy with each individual defendant.

_____ (b) Substitute Service - by leaving a copy at the usual place of abode of each individual defendant with a person of his or her family of the age of 13 years or upwards, informing that person of the contents, and by sending a copy of the writ in a sealed envelope, with postage fully prepaid and addressed to each individual defendant at his or her usual place of abode.

__xx__ (c) Corporation Service - by leaving a copy with the registered agent, officer or agent of each defendant corporation.

_____ (d) Posting Service - by posting a copy upon the premises.

_____ (e) The within named defendant was not served/found in Kane County.   Date: _____

Comments: n/a

| | |
|---|---|
| Name of Defendant: | Smith & Nephew, Inc. |
| Writ Given to: | Gina M. Lendi |
| Relationship or Title: | Operations specialist authorized to accept service |
| Sex: | Female       Race: Caucasian       Approx. Age: 28 yoa |
| Place of Service: | CT Corporation, 208 South LaSalle St. Chicago, Illinois 60604 |
| Date of Service: | 5 Jul 13       Time: 12:05 pm. |
| Date of Mailing: | N/A |

Process Server's Fee
Service:   $150.00        Mileage:   $40.00        Total Fee:   $190.00

Dan Klinkhamer, Private Investigator
License No. 117-000884

State of: __Illinois__        County of: __Kane__

Subscribed and sworn to before me this __5__ day of __July__, 201__3__

My commission expires on _____

"OFFICIAL SEAL"
EMMA BURGESS
Notary Public, State of Illinois
My Commission Expires 11/29/14

C:\Users\Klinkhamer\Documents\Dan's affadavit of service.doc

# Exhibit C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-LAW DIVISION

Rev.5/

_John Curran,_____ ,  )
    Plaintiffs
-v-

NO: 2013 L 007437

_Smith + Nephew_____ ,  )
    Defendants

Motion Call "C"   Time: 9:30  Line #: 1

## CASE MANAGEMENT ORDER

**\*\*(Please check off all pertinent paragraphs and circle proper party name)\*\***

(8230) _____ 1. Category #1 (18-mo. discovery)    (8232) _____ 1A. Category #2 (28 Mo. Discovery

(4231) _____ 2. Written & (f)(1) and (f)(2) discovery to be **issued** by _____ _or deemed waived_

(4296) _____ 3. Written & 213(f)(1) and (2) discovery to be **answered** by _____

(4218) _____ 4. Oral discovery & 213(f)(1) and (2) depositions to be **completed** by _____

(4288) _____ 5. Subpoenas for treating physicians' deps to be **issued** by _____ _or deemed waived_

(4218) _____ 6. Treating physicians depositions to be **completed** by _____

(4206) _____ 7. (Plaintiff) **or** (Defendant) **or** (Add. Party) shall **answer** 213 (f)(3) Interrogatories by _____

(4218) _____ 8. **Plaintiff's 213(f)(3)** witnesses' depositions to be **completed** by _____

(4218) _____ 9. **Defendant's 213(f)(3)** witnesses' depositions to be **completed** by _____

(4218) _____ 10. **Add. party's 213(f)(3)** witnesses' depositions to be **completed** by _____

(4295) _____ 11. **All fact discovery, SCR 213(f)(1) and/or SCR 213(f)(2) discovery is closed.** *(Circle all applicable*

(4619) _____ 12. The matter is continued for subsequent Case Management Conference on _____
at _____ AM/PM in Room 2203 for:

_Plaintiff's motion to voluntarily dismiss is granted_

(A)_____ Proper Service  (B)_____ Appearance of Defendants  (C)_____ Case Value
(D)_____ Pleadings Status  (E)_____ Discovery Status  (F)_____ Pre-Trial/Settlement
(G)_____ Mediation Status  (H)_____ Trial Certification  (I)_____ Other

_The court expressly reserves the plaintiff's right to refile and_
_maintain a second action against defendants in accordance_
_with 735 ILCS 5/2-1009 and 735 ILCS 5/13-217_

(4005) ✓ 13. Case is DWP'd.  (**4040**) X The case is voluntarily dismissed pursuant to 735 ILCS 5/2-1009.

(4331) _____ 14. Case stricken from  (4284) _____ Motion Stricken or  (4330) _____ Case stricken from
    CMC Call    Withdrawn from Call    Motion Call.

NAME: _Myers-Flower (Rizzi)_  _Pro Se by_
ADDRESS: _____
PHONE: _630-232-6333_
ATTY ID#: _56079_
ATTY FOR PARTY: _Ptf_

**E N T E R :**

_[signature] 1766_

**J U D G E** _____ NO.

JUDGE JOHN P. KIRBY

JUL 25 2013

CIRCUIT COURT-1766

## NOTICE:

**★** *COPIES OF ALL PRIOR CMC ORDERS MUST BE BROUGHT TO ALL CMC COURT DATES.*

**★** *FAILURE OF ANY PARTY TO COMPLY WITH THIS CMC ORDER WILL BE A BASIS FOR SCR 219(C) SANCTIONS. FAILURE OF ANY PARTY TO ENFORCE THIS CMC ORDER WILL CONSTITUTE A WAIVER OF SUCH DISCOVERY BY THAT PARTY.*

# Exhibit D

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
CALENDAR: B
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY
## STATE OF ILLINOIS

| | |
|---|---|
| JOHN CURRAN, | Case Number: |
| Plaintiff, | |
| v. | JURY DEMAND |
| Smith & Nephew, Inc. and Neubauer-Perkins, Inc. | |
| Defendant. | |

### COMPLAINT AT LAW AND JURY DEMAND

NOW COMES the Plaintiff, JOHN CURRAN, by and through his attorney, PETER J. FLOWERS of MEYERS & FLOWERS, L.L.C. complaining against Defendant SMITH & NEPHEW, INC. AND NEUBAUER-PERKINS, INC. and allege:

### COMMON ALLEGATIONS

1.    JOHN CURRAN was implanted with a Smith & Nephew Emperion™ Hip System (hereinafter referred to as "EMPERION") in the State of Illinois.

2.    JOHN CURRAN's EMPERION was removed from his hip in the State of Illinois.

3.    At all relevant times, Smith & Nephew was registered as a Delaware Corporation.

4.    At all relevant times, Smith & Nephew was duly registered and/or licensed to do business in the State of Illinois.

5.    Smith & Nephew's registered agent in Illinois is CT Corporation System located at 208 South LaSalle Street, Suite 814, City of Chicago, County of Cook, State of Illinois.

6.    Neubauer-Perkins, Inc., is located at 3100 Dundee Road, Suite 710, City of Northbrook, County of Cook, State of Illinois.

1

7.   At all relevant times, Neubauer-Perkins, Inc., has been the exclusive sales agent and distributor for Smith & Nephew's orthopedic medical devices in Illinois.

8.   Neubauer-Perkins, Inc., earns a monetary commission on all Smith & Nephew products sold in Illinois from Smith & Nephew.

9.   This products liability lawsuit seeks compensatory damages on behalf of JOHN CURRAN, who was implanted with an artificial hip replacement system known as the EMPERION that the Defendants, SMITH & NEPHEW, INC. and NEUBAUER-PERKINS, INC., designed, manufactured, marketed, sold and distributed.

10.   At all relevant times, Smith & Nephew and Neubauer-Perkins, Inc. has been the exclusive sales agent and distributor for the EMPERION in Illinois.

11.   The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (ball like structure at the top of the femur), rotating within the acetabulum (a cup-like structure at the bottom of the pelvis). In a healthy hip, both the femur and the acetabulum are strong, and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it can cause severe pain and immobility.

12.   A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem, (2) a femoral head, (3) a liner and (4) an acetabular shell. The surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 2 of 14

13.     The EMPERION hip implant design is more prone to component fracture when implanted into a human being than hip devices manufactured by other companies.

14.     The EMPERION and related components were approved under a process by the Food and Drug Administration (hereinafter referred to as the "FDA") known as a 510(k). A 510(k) medical device does not have to go through the rigors of a clinical study to gain approval by the FDA.

15.     Before July 8, 2009, JOHN CURRAN began medical treatment for right hip arthritis with Wayne Goldstein, M.D.

16.     Before July 8, 2009, Wayne Goldstein, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, through his experience and training in the practice of medicine, indicated JOHN CURRAN met the criteria for a total hip replacement on his right hip.

17.     On or about July 8, 2009, Wayne Goldstein, M.D., implanted the Smith & Nephew EMPERION into the right hip of JOHN CURRAN in the State of Illinois.

18.     At all relevant times and before the implantation of the EMPERION in the PLAINTIFF, SMITH & NEPHEW and NEUBAUER-PERKINS, INC. and knew that the EMPERION was defective and harmful to consumers.

19.     At all relevant times and before the implantation of the EMPERION in the PLAINTIFF, SMITH & NEPHEW and NEUBAUER-PERKINS, INC. had regular and frequent communications from surgeons who had implanted the EMPERION, including PLAINTIFF's surgeon, regarding failures and complications of the EMPERION.

20.     On or around October 19, 2011, JOHN CURRAN learned that his EMPERION failed and needed to be revised with another hip prosthesis.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 3 of 14

3

21.     On or around October 19, 2011, JOHN CURRAN learned that his EMPERION had prematurely failed.

22.     On or about October 27, 2011, Alexander Gordon, M.D., an orthopaedic surgeon licensed to practice medicine in the State of Illinois, removed the EMPERION implant from JOHN CURRAN and replaced it with another hip prosthesis in the State of Illinois.

## <u>COUNT I – STRICT PRODUCT LIABILITY AGAINST SMITH & NEPHEW</u>

23.     JOHN CURRAN incorporates by reference paragraphs 1 through 22 as if fully set forth herein.

24.     SMITH & NEPHEW had a duty to place into the stream of commerce, manufacture, distribute, market, promote, and sell the EMPERION that was not defective and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

25.     SMITH & NEPHEW did in fact sell, distribute, supply, and/or promote the EMPERION to JOHN CURRAN and his implanting physician.

26.     SMITH & NEPHEW expected the EMPERION it was selling, distributing, supplying, manufacturing, and/or promoting to reach, and it did in fact reach, implanting physicians and consumers in the state of Illinois, including Plaintiff and his implanting physicians, without substantial change in the condition.

27.     At the time the EMPERION left the possession of SMITH & NEPHEW and the time EMPERION entered the stream of commerce, the EMPERION was in an unreasonably dangerous and defective condition.  These defects include but are not limited to the following:

    (a)     The EMPERION was not reasonably safe as intended to be used;

    (b)     The EMPERION had an inadequate design for the purposes of hip replacement;

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 4 of 14

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 5 of 14

(c)     The EMPERION contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

(d)     The EMPERION's unstable and defective design resulted in a hip prosthesis, which had risks which exceeded the benefits of the medical device;

(e)     The EMPERION's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

(f)     The EMPERION failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

(g)     The EMPERION was insufficiently tested; and

(h)     The warning to PLAINTIFF and PLAINTIFF's implanting physicians about the dangers the EMPERION posed to consumers including PLAINTIFF were inadequate. The inadequacy of SMITH & NEPHEW's warnings include, but are not limited to, the following:

    i. Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the EMPERION, subjecting PLAINTIFF to risks which exceeded the benefits of the EMPERION;

    ii. Contained misleading warnings emphasizing the efficacy of the EMPERION while downplaying the risks associated with it, thereby making use of the EMPERION more dangerous than the ordinary consumer would expect;

    iii. Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with

5

the EMPERION;

    iv.  Did not disclose that it was inadequately tested;

    v.  Failed to convey adequate post-marketing warnings regarding the risk, severity, scope, and/or duration of the dangers posed by the EMPERION; and

    vi.  Failed to contain instructions sufficient to alert consumers to the dangers they posed, and to give them the information necessary to avoid or mitigate those dangers.

28.    JOHN CURRAN used the EMPERION for its intended purpose, i.e. hip replacement.

29.    JOHN CURRAN could not have discovered any defect in the EMPERION through the exercise of due care.

30.    SMITH & NEPHEW as designer, manufacturer, marketer, and distributor of medical devices is held to the level of knowledge of an expert in their field.

31.    JOHN CURRAN and the implanting physician did not have substantially the same knowledge as the designer, manufacturer, or distributor: SMITH & NEPHEW.

32.    As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by SMITH & NEPHEW, JOHN CURRAN was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, JOHN CURRAN prays for judgment against Defendant, SMITH & NEPHEW, INC. and NEUBAUER-PERKINS, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 6 of 14

## COUNT II – NEGLIGENCE AGAINST SMITH & NEPHEW

33.    Plaintiffs incorporate by reference paragraphs 1 through 32 as if fully set forth

herein.

34.    At all times relevant, it was the duty of SMITH & NEPHEW to exercise due care

in designing, testing, manufacturing, distributing, marketing, promoting, and selling of the

EMPERION such that it would be reasonably safe for its intended use.

35.    SMITH & NEPHEW's negligence in the designing, testing, manufacturing,

distributing, marketing, promoting, and selling of the EMPERION.

    a.  EMPERION was negligently designed and manufactured, creating increased
metal corrosion;

    b.  SMITH & NEPHEW's surgical protocol which, among other things, should
provide a surgeon who possesses the requisite degree surgical skill the
information necessary for proper use of the device.  Even after a proper review
of all EMPERION surgical technique literature, other SMITH & NEPHEW
literature, and receiving proper training during residency programs, a surgeon
of standard competence and experience still lacks the requisite information
necessary for safe and effective use of the EMPERION;

    c.  SMITH & NEPHEW committed manufacturing errors, including but not
limited to size tolerances out of specification and not within industry
acceptable standards;

    d.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and
selling the EMPERION, negligently misrepresented material facts regarding
the EMPERION's safety, efficacy, and fitness for human use by claiming the
EMPERION was fit for its intended purpose when, in fact, it was not;

    e.  SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and
selling the EMPERION, negligently misrepresented material facts regarding
the EMPERION's safety, efficacy, and fitness for human use by claiming the
EMPERION had been adequately and reliably tested when, in fact, it was not;

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 7 of 14

f. SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the EMPERION was safe and effective and was appropriate for use by human beings when, in fact, it was not;

g. SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the risk of serious adverse events and/or effects from the EMPERION was comparable to that of other hip replacement systems, when in fact it was not; and

h. SMITH & NEPHEW, in advertising, marketing, promoting, packaging, and selling the EMPERION, negligently misrepresented material facts regarding the EMPERION's safety, efficacy, and fitness for human use by claiming the EMPERION had not caused or contributed to serious adverse events and/or effects requiring the premature explants of the device when, in fact, it had.

36. SMITH & NEPHEW knew or had reason to know that JOHN CURRAN, as a member of the general public for whose use the EMPERION was placed into interstate commerce, would be likely to use the EMPERION in a manner described in this Complaint.

37. SMITH & NEPHEW knew or reasonably should have known of the danger associated with the manner and circumstances of JOHN CURRAN's foreseeable use of the EMPERION, which danger would not be obvious to the general public.

38. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by SMITH & NEPHEW, JOHN CURRAN was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 8 of 14

WHEREFORE, JOHN CURRAN prays for judgment against defendant SMITH & NEPHEW, INC. and NEUBAUER-PERKINS, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT III – BREACH OF WARRANTY AGAINST SMITH & NEPHEW

39.     Plaintiffs incorporate by reference paragraphs 1 through 38 of the Common Allegations as if fully set forth herein.

40.     JOHN CURRAN currently is not in possession of any document relating to representations, warnings, and/or communications made by defendants in this action. JOHN CURRAN reserves the right to present evidence in support of the claim which is not presently in his possession, but which will be discovered in the ordinary course of litigation. Such evidence may include, but is not necessarily limited to: Instruction for Use Manuals; all written material or information provided on and/or within any and all packaging associated with JOHN CURRAN's device; manufacturer's labels, package inserts; Adverse Event Reports; clinical trial data; medical literature; medical research findings and opinions; medical publications; advertisements; sales and promotional materials; internal memoranda, emails, communications and databases; sales, prescription and adverse event report databases; and communications from SMITH & NEPHEW in this action, including SMITH & NEPHEW's employees, officers, directors, agents, representatives, contractors and business associates, to the public, medical community, Plaintiff's implanting surgeon and JOHN CURRAN. Upon information, knowledge and belief, JOHN CURRAN alleges the documents, instruments and/or evidence stated above are in the possession of SMITH & NEPHEW.

41.     At the time SMITH & NEPHEW marketed, sold, and/or distributed the EMPERION, it knew that the hip device was intended for human use.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 9 of 14

42.     At the time SMITH & NEPHEW marketed, sold, and/or distributed the EMPERION, JOHN CURRAN was a foreseeable user of the device.

43.     At the time SMITH & NEPHEW marketed, sold, and/or distributed the EMPERION, it expressly and/or impliedly warranted that the hip, including all of its component parts, was safe and merchantable for their intended use.

44.     JOHN CURRAN and his implanting surgeon reasonably relied upon the representations that the EMPERION was of merchantable quality and safe for their intended uses.

45.     JOHN CURRAN used the EMPERION for its intended purpose.

46.     Contrary to the express and implied warranties, at the time SMITH & NEPHEW marketed, sold and/or distributed the EMPERION, it was not of merchantable quality or safe for their intended use as described above.

47.     As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by SMITH & NEPHEW, JOHN CURRAN was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to his normal affairs and duties for an indefinite period of time.

WHEREFORE, JOHN CURRAN, prays for judgment against defendant SMITH & NEPHEW, INC. and NEUBAUER-PERKINS, INC., in a sum in excess of jurisdictional limits of this Court, together with interests and costs of this action.

## COUNT IV – STRICT PRODUCT LIABILITY AGAINST NEUBAUER-PERKINS, INC.

1.      JOHN CURRAN incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 10 of 14

2.     NEUBAUER-PERKINS, INC. had a duty to place into the stream of commerce, distribute, market, promote, and sell the EMPERION that was not defective or unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

3.     NEUBAUER-PERKINS, INC. did in fact sell, distribute, supply, deliver, and/or promote the EMPERION to JOHN CURRAN and her implanting physician.

4.     At all times material and before the implantation of the EMPERION in the PLAINTIFF, NEUBAUER-PERKINS, INC. had actual knowledge of the defects in the EMPERION as alleged herein.

5.     At all times material and before the implantation of the EMPERION in the PLAINTIFF, NEUBAUER-PERKINS, INC. had regular communications with the implanting surgeons who utilized the EMPERION/ANTHOLOGY, including the surgeon who implanted the EMPERION in the PLAINTIFF, such that NEUBAUER-PERKINS, INC. was in a unique position to provide SMITH & NEPHEW with warnings relative to the alleged defects in the EMPERION and did in fact provide SMITH & NEPHEW with such warnings based upon complaints and comments NEUBAUER-PERKINS, INC. received from the implanting surgeons.

6.     NEUBAUER-PERKINS, INC. expected the EMPERION it was selling, delivering, and distributing to reach, and it did in fact reach, implanting physicians and consumers in the state of Illinois, including Plaintiff and her implanting physicians, without substantial change in the condition.

7.     At the time the EMPERION left the possession of NEUBAUER-PERKINS, INC., and the time EMPERION entered the stream of commerce, the EMPERION was in an

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 11 of 14

11

unreasonably dangerous and defective condition. These defects, of which NEUBAUER-PERKINS, INC. had actual knowledge, include but are not limited to the following:

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 12 of 14

    (a)    The EMPERION was not reasonably safe as intended to be used;

    (b)    The EMPERION had an inadequate design for the purposes of hip replacement;

    (c)    The EMPERION contained unreasonably dangerous design defects, including an inherently unstable and defective design, which resulted in an unreasonably high probability of early failure;

    (d)    The EMPERION/ANTHOLOGY's unstable and defective design resulted in a hip prosthesis which had risks which exceeded the benefits of the medical device;

    (e)    The EMPERION/ANTHOLOGY's unstable and defective design resulted in a hip prosthesis which was more dangerous than the ordinary consumer would expect;

    (f)    The EMPERION failed to perform in a manner reasonably expected in light of its nature and intended function, and subjected the PLAINTIFF to an unreasonable risk of harm beyond that contemplated by an ordinary person;

    (g)    The EMPERION was insufficiently tested; and

    (h)    The warning to PLAINTIFF and Plaintiff's implanting physicians about the dangers the EMPERION posed to consumers including PLAINTIFF were inadequate, including, but are not limited to, the following:

        i.    Insufficient to alert PLAINTIFF and Plaintiff's physicians as to the risk of adverse events and/or reactions associated with the EMPERION/ANTHOLOGY, subjecting PLAINTIFF to risks which exceeded the benefits of the EMPERION/ANTHOLOGY;

        ii.    Contained misleading warnings emphasizing the efficacy of the EMPERION while downplaying the risks associated with it thereby making use of the EMPERION more dangerous than the ordinary

consumer would expect;

   iii.  Contained insufficient and/or incorrect warnings to alert consumers, including PLAINTIFF, through their prescribing physicians regarding the risk, scope, duration, and severity of the adverse reactions associated with the EMPERION/ANTHOLOGY;

   iv.  Did not disclose that it was inadequately tested;

   v.  Failed to convey adequate post-marketing warnings regarding the risk, severity, scope and/or duration of the dangers posed by the EMPERION/ANTHOLOGY; and

   vi.  Failed to contain instructions sufficient to alert consumers to the dangers they posed and to give them the information necessary to avoid or mitigate those dangers.

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 13 of 14

8.     JOHN CURRAN used the EMPERION for its intended purpose, i.e. hip replacement.

9.     JOHN CURRAN could not have discovered any defect in the EMPERION through the exercise of due care.

10.     NEUBAUER-PERKINS, INC., as a distributor, supplier, deliverer, and/or promoter of medical devices, is held to the level of knowledge of an expert in their field.

11.     JOHN CURRAN and the implanting physician did not have substantially the same knowledge as the distributor, supplier, deliverer, and/or promoter: NEUBAUER-PERKINS, INC.

12.     As a direct and proximate result of one or more of the foregoing wrongful acts or omissions by NEUBAUER-PERKINS, INC., the PLAINTIFF was caused to suffer and sustain injuries of a permanent nature; to endure pain and suffering in body and mind; to expend money for medical care in the past and in the future; furthermore, JOHN CURRAN was unable to and will in the future be unable to attend to her normal affairs and duties for an indefinite period of time.

13

WHEREFORE, JOHN CURRAN prays for judgment against defendant

NEUBAUER-PERKINS, INC., in a sum in excess of jurisdictional limits of this Court, together

with interests and costs of this action.

## JURY DEMAND

PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY.

RESPECTFULLY SUBMITTED,

MEYERS & FLOWERS, LLC.

By:_____

Peter J. Flowers
One of the Attorneys for Plaintiff

ELECTRONICALLY FILED
7/3/2014 3:30 PM
2014-L-007073
PAGE 14 of 14

Peter J. Flowers (#56079)
PJF@Meyers-Flowers.com
Meyers & Flowers, L.L.C.
3 North Second Street, Suite 300
St. Charles, IL 60174
(630) 232-6333

# Exhibit E

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |

☑SUMMONS ☐ALIAS - SUMMONS (2/18/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____LAW_____ DIVISION

JOHN CURRAN

No. 2014-L-007073

(Name all parties)

v.

Defendant Address:

SMITH & NEPHEW, INC

SMITH & NEPHEW INC
R/A CT CORPORATION
208 S LASALLE STREET
SUITE 814
CHICAGO, IL 60604

**Summons**

To each Defendant: ☑SUMMONS ☐ALIAS - SUMMONS

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____801_____ ,Chicago, Illinois 60602

☐ **District 2 - Skokie**
5600 Old Orchard Rd.
Skokie, IL 60077

☐ **District 3 - Rolling Meadows**
2121 Euclid
Rolling Meadows, IL 60008

☐ **District 4 - Maywood**
1500 Maybrook Ave.
Maywood, IL 60153

☐ **District 5 - Bridgeview**
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ **District 6 - Markham**
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ **Child Support**
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 56079

Name: PETER JOHN FLOWERS

Atty. for: JOHN CURRAN

Address: 3 N 2ND STREET, SUITE 300

City/State/Zip: ST CHARLES, IL 60174

Telephone: (630) 232-6333

WITNESS, Thursday, 03 July _____ 2014

/s DOROTHY BROWN
Clerk of Court

Date of service: _____

(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)       (Facsimile Telephone Number)

/s DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION
### CASE NO.2014-L-007073
AFFIDAVIT OF SPECIAL PROCESS SERVER

**Brae Grobarek**, being first duly sworn on oath deposes and says that he/she served process in the above mentioned cause.

That he/she served the within:

        (**X** ) Summons & Complaint
        (   ) Citation to Discover Assets
        (   ) Rule to Show Cause
        (   ) Subpoena
        (   ) Other:

1.     (   ) By leaving a copy with the named party, ------- personally on -------

2.     (   ) On the within named party, -------, by leaving a copy with -------, -------, who states that they are a member of the household on -------, and informed that person of the contents thereof, and that further he/she mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on -------.

3.     ( **X** ) On the within party, **Smith & Nephew, Inc., c/o CT Corporation System** , by leaving a copy with **Derrick Hackett, Intake Specialist and Authorized Person** on **July 7, 2014**, and informed that person of the contents thereof.

4.     ( **X** ) That the sex, race, and approximate age of the person with whom he/she left the documents were as follows:

SEX: **Male**          RACE: **African American**      APPROXIMATE AGE: **24**

5.     ( **X** ) That the place where and the time of day when the documents were served were as follows:

PLACE: **208 South LaSalle Street, Suite 814, Chicago, IL 60604**
TIME OF DAY: **2:42 PM**

6.     (   ) That he/she was unable to serve within named party ------- located at ------- for the reason: -------

Signed and Sworn to before me
This **11th** day of **July 2014**

                        Brae Grobarek
                        Special Process Server
                        IT'S YOUR SERVE, INC.
                        Private Detective No. 117-000885

14-06088

OFFICIAL SEAL
KERRI RUSWICK
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 11/24/17

# Exhibit F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| JOHN CURRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. _____ |
| | ) | |
| SMITH & NEPHEW, INC. and | ) | |
| NEUBAUER-PERKINS, INC. | ) | |
| ` | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF ATTORNEY ANTHONY J. MONACO

I, Anthony J. Monaco, after being sworn and upon oath, state that if I were called to an evidentiary hearing I would competently testify to the following:

1.     I am an attorney for Defendants Smith & Nephew, Inc. and Neubauer-Perkins, Inc. in the case titled <u>John Curran v. Smith & Nephew, Inc. and Neubauer-Perkins, Inc.</u>

2.     I am knowledgeable about the residency and principal place of business of Smith & Nephew, Inc., a Delaware corporation with its principal place of business in Memphis, Tennessee.

3.     I am knowledgeable about the residency and principal place of business of NPI, an Illinois Corporation with its principal place of business in Illinois.

4.     At the time of the incident complained of and at the time this Complaint at Law was filed, Plaintiff Curran was a resident and citizen of the State of Illinois.

1

5.      In the time that I have worked as an attorney in Illinois, I have been involved with numerous products liability suits such as this one.

6.      As a trial attorney for the Defendant Smith & Nephew, Inc., I have a good faith belief, based on the Plaintiff's Complaint, and my experience in handling numerous product liability actions, that the real parties in interest are in diversity, the amount in controversy exceeds the jurisdictional amount of $75,000.01 exclusive of costs and interest and removal is proper.    In fact, Plaintiff's counsel has demanded far in excess of the jurisdictional limit of $75,000.01 in which to settle this matter.

7.      I represent both of the named Defendants, Smith & Nephew, Inc. and Neubauer-Perkins, Inc., and both parties consent to removal of this action.

8.      Pursuant to 28 U.S.C. § 1746(2) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:   August 6, 2014                    By:    /s/ Anthony J. Monaco

Anthony J. Monaco, ARDC #6279545
Anthony N. Bartosik #6289016
Brittany L. Kaspar, ARDC #6313195
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 – fax
amonaco@smbtrials.com
abartosik@smbtrials.com
bkaspar@smbtrials.com

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

JOHN CURRAN,               )
                                 )
     Plaintiff,         )
                                 )
     vs.             )   No. _____
                                 )
SMITH & NEPHEW, INC. and    )
NEUBAUER·PERKINGS, INC.    )
                               )
     Defendants.    )

## AFFIDAVIT OF WALLY PERKINS

I, Wally Perkins, declare under penalties of perjury as set forth in 28 U.S.C. 1746, that I am over the age of 18, and if called to do so, could and would testify competently to the following facts based upon my own personal knowledge:

1.    I am the President and Chief Executive Officer of Neubauer·Perkins, Inc. ("NPI"). I have been in this position since January 1994. I make this Declaration based upon my personal knowledge.

2.    NPI is a corporation organized under the laws of the State of Illinois. Its principal place of business is at 1920 N. Thoreau Drive, Suite 125, Schaumburg, IL 60173.

3.    The products identified in Plaintiff's Complaint in this matter are components of the Smith & Nephew Emperion Hip System ("the Product").

4.    The manufacturer of the Product at issue in this case is Smith & Nephew, Inc. ("S&N").

1

5.   NPI serves as an independent sales representative for S&N in connection with the Product in the extended Chicago, Illinois area, including the North West counties.

6.   NPI did not exercise any control over the design or manufacture of the Product.

7.   NPI played no role in the design, testing, or manufacture of the Product identified in the Complaint. NPI did not develop or publish the package inserts or marketing materials that accompanied these devices or were otherwise disseminated to health care providers.

8.   NPI also did not create, alter, revise or have any involvement in obtaining any approval of any warnings or instructions relating to any Product.

9.   In fact, the contract between NPI and S&N requires all communications and representations to customers to be consistent with S&N's written instructions and consistent with the labeling of the Product.

10.   The contract further prohibits NPI from modifying, repackaging, adulterating, misbranding, altering, or adding labels to or removing labels from the Products.

11.   NPI has strictly adhered to its obligations under its contract with S&N.

12.   NPI's role with respect to the Product is limited to disseminating information created and prepared by S&N about the device, displaying samples of the device to hospitals and/or physicians, and supplying hospitals with the pre-

2

ordered S&N products on the date of surgery, along with the package inserts and marketing materials accompanying the Product.

13.     The pre-ordered S&N products are delivered to the hospital in sterile packaging that has been labeled, packaged, and sealed by S&N.

14.     In no event does NPI or any NPI representative remove the Product from the inner sterile packaging prior to it being implanted in the patient by the patient's physician.

15.     NPI does not and did not ever take title to or an ownership interest in any S&N product.

16.     NPI does not make any payments to S&N, and does not receive payment from hospitals for the S&N Products.

17.     Rather, the physicians and/or hospitals pay S&N for its products directly.

18.     Further, NPI does not and did not offer or make any warranties on any S&N product and has never made any representation or statement or provided any express or implied warranties to any physician, or to any member of the public, including the Plaintiff in this case.

19.     The decision to implant a certain prosthesis is made by a physician and not by NPI or its representatives.

20.     To my personal knowledge, neither I nor any NPI representative has had any direct dealings or communications with the Plaintiff in this case.

3

21.    I have reviewed Plaintiff's Complaint in this matter and Plaintiff has not identified what the alleged manufacturing and/or design defect in the implant is which allegedly caused Plaintiff's damages.

22.    NPI is unaware of any defect in the plaintiff's implant.

23.    NPI does not have any knowledge of any aspect of the plaintiff's implant which constitutes an unreasonably dangerous condition.

24.    At no time will NPI employees distribute a product if NPI has knowledge that there is any manufacturing and/or design defect or any unreasonably dangerous conditions.

25.    NPI was not aware of any manufacturing and/or design defects or unreasonably dangerous conditions in the subject implant at the time of distribution.

FURTHER DECLARANT SAYETH NOT

Dated: August ___5___, 2014

I declare under penalties of perjury as set forth in 28 U.S.C. 1746 that the statements set forth herein are true and correct except as to those matters stated on information and belief, and as to such matters, I verily believe the same to be true.

Wally Perkins

# Exhibit H

IN THE CIRCUIT COURT OF COOK COUNTY – LAW DIVISION
STATE OF ILLINOIS

JOHN CURRAN,      )
           )
    Plaintiff,   )
           )
v.          )
           )
SMITH & NEPHEW, INC., and  )   CASE NO. 2014-L-007073
NEUBAUER-PERKINS, INC.,   )
           )
    Defendants.  )

## NOTICE OF FILING - NOTICE OF REMOVAL

TO:  Clerk of the Circuit Court of Cook County, Illinois
   Richard J. Daley Center
   50 W. Washington Street
   Chicago, IL 60602

    Please take notice that on August 6, 2014 the above-captioned case was removed from the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois. A copy of defendant Smith & Nephew, Inc.'s Notice of Removal is attached hereto and served upon you herewith.

         Respectfully submitted,

         SMITH & NEPHEW, INC.

         By: _____
           One of its attorneys

Anthony J. Monaco, ARDC #6279545
Brittany L. Kaspar, ARDC #6313195
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
(312) 321-0990 – fax
amonaco@smbtrials.com
bkaspar@smbtrials.com
Firm No. 29558